UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID NESBITT,

                    Plaintiff,

v.

ROOSEN, VARCHETTI &
OLIVIER, PLLC, *et al.*,

                    Defendants.
_____/

Civil Action No. 26-10333

Laurie J. Michelson
United States District Judge

David R. Grand
United States Magistrate Judge

### REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 3, 5)

On or about November 7, 2025, *pro se* plaintiff David Nesbitt ("Nesbitt") filed this action in the Wayne County Circuit Court, setting forth claims against five defendants: the 36th District Court and three of its "Clerks" – Dana Niemiec, Jennifer Lada, and Penny Wasalaski – (collectively referred to as the "Court Defendants"); and the law firm of Roosen, Varchetti & Olivier, PLLC ("RVO").  (ECF No. 1).  Nesbitt's complaint contains seven counts, pled in the most skeletal fashion: violation of due process under the Fourteenth Amendment and Michigan Constitution; violation of the Fair Debt Collection Practices Act ("FDCPA"); fraud upon the court and abuse of process; conversion and trespass against trust estate; racketeering under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); civil rights violations under 18 U.S.C. §§ 241 and 242; and negligent supervision and misconduct by public officers.  (*Id.*, PageID.8).  On January 29, 2026, the defendants removed Nesbitt's action to this Court pursuant to 28 U.S.C. §§ 1331

and 1441.  (*Id.*, PageID.3).

Now pending before the Court are two motions to dismiss, one filed by RVO on February 4, 2026, and one filed by the Court Defendants on February 5, 2026.  (ECF Nos. 3, 5).  On March 5, 2026, Nesbitt filed a single response to both motions.  (ECF No. 7).  RVO and the Court Defendants filed reply briefs on March 13, 2026, and March 20, 2026, respectively.  (ECF Nos. 8, 9).

An Order of Reference was entered on February 2, 2026, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b).  (ECF No. 2).  Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that RVO's and the Court Defendants' dispositive motions **(ECF Nos. 3, 5)** be **GRANTED**.

## II.     REPORT

### A.      Background

Nesbitt's complaint arises out of a prior state court collection action filed against him by Credit Acceptance Corporation ("CAC") in the 35th District Court (Case No. 22P2503GC) (the "State Court Case").[1]  (ECF No. 3-2).  The State Court Case stemmed

---

[1] The Sixth Circuit has "taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)," holding that "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings," and further that "courts may also

from Nesbitt's failure to make his car payments.  Specifically, in December of 2016, Nesbitt purchased a 2006 Dodge Durango with approximately $13,000 in financing from CAC.  (*Id.*, PageID.34-38).  When Nesbit defaulted on the loan, CAC repossessed the vehicle and sold it to pay off a portion of the debt.  Following the sale, the remaining amount due plus interest owed amounted to $10,518.36.  (*Id.*, PageID.33).

Represented by RVO, CAC initiated the State Court Case in approximately July of 2022.  (ECF No. 3-2).  The 35th District Court issued an order for substituted/alternate service by allowing tacking at Nesbitt's mailing address of 1098 Ann Arbor Road (which is the same address Nesbitt provided in this case).  (ECF No. 3-7, PageID.58).  The complaint was served in this manner on October 24, 2022 (*id.*, PageID.60), and Nesbitt failed to file any responsive pleading.  Thus, a default judgment was entered in CAC's favor on January 6, 2023.  (*Id.*, PageID.50-51).  A writ of garnishment was entered on November 2, 2023, and provided to CAC and/or its attorneys (RVO) for service on Nesbitt.  (*Id.*, PageID.54).  Following payments for the full amount of the judgment, the garnishment was released, and the judgment was satisfied.  (*Id.*, PageID.53, 56).

Nesbitt then filed the instant federal court action in November of 2025.  In his amended complaint, Nesbitt alleges that the defendant Clerks of the 35th District Court "issued or facilitated issuance of a writ of garnishment without judicial signature in

---

consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001); *see also Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (holding that documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, when it is clear that there exist no material disputed issues of fact regarding the relevance of the documents).

violation of Michigan Court Rules and due process." (ECF No. 1, PageID.7). Nesbitt further alleges that defendant Wasalaski was in a supervisory position and "authorized the garnishment process without judicial order." (*Id.*). In sum, Nesbitt alleges that he "never received lawful service of a Summons and Complaint" in the State Court Case; that the garnishment was "issued and executed without a judge's signature, in direct violation of MCR 3.101 and [Nesbitt's] due process rights"; and that the "garnishment paperwork submitted by Defendants deliberately REDACTED the alleged account number of the debt, thereby preventing [him] from verifying or challenging the validity and identity of the debt being collected." (*Id.*) (emphasis in original). Nesbitt then simply lists the seven purported causes of action set forth above, *supra* at 1, without providing any detailed factual allegations in support of those claims. (*Id.*, PageID.8).

RVO and the Court Defendants now move to dismiss Nesbitt's claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that Nesbitt's amended complaint is barred by *res judicata* and collateral estoppel and, additionally, fails to state a claim upon which relief can be granted. For the reasons set forth below, the Court agrees.

**B.    Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). But "[t]he leniency granted to pro se [litigants] … is not boundless[,]" *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead facts sufficient to show a redressable legal wrong has been committed[.]" *Baker v.*

5

*Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### C.      Analysis

#### 1.      *Nesbitt's Claims against RVO are Barred by Res Judicata*

As an initial matter, to the extent that Nesbitt's causes of action are directed at RVO – which is not entirely clear from the face of the amended complaint – they are barred by principles of *res judicata*.[2]   The Full Faith and Credit Clause of the United States Constitution and its implementing statute, 28 U.S.C. § 1738, require federal courts to give preclusive effect to state-court judgments.  Because federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgement was rendered," this Court looks to Michigan law governing *res judicata* to determine its applicability.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

In Michigan, the doctrine of *res judicata* bars a second, successive action "if (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006) (internal quotations omitted); *see also Sewell v. Clean Cut Mgmt., Inc.*, 463 Mich. 569, 575 (2001).  Michigan courts take a "broad approach to the doctrine of res judicata," and the presence of these

---

[2] While generally raised as an affirmative defense, *res judicata* "may be raised in a Rule 12(b)(6) motion where the existence of the defense can be determined from the face of the complaint." *Scott v. City of Detroit*, No. 20-11573, 2021 WL 323756, at *2 (E.D. Mich. Feb. 1, 2021) (internal quotations omitted).  "In evaluating a res judicata defense presented by way of a Rule 12(b)(6) motion, a court may take judicial notice of its own records and the records of other courts." *Id.*

three elements "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Washington v. Sinai Hosp. of Greater Detroit*, 478 Mich. 412, 418 (2007) (internal quotations omitted); *see also Young*, 471 F.3d at 680.

### a.      Adjudication on the Merits

Turning to the first element, RVO has demonstrated that, on behalf of CAC, it filed a lawsuit against Nesbitt, seeking to collect on a debt in the amount of $10,518.36.  (ECF No. 3-2).  When Nesbitt failed to defend or otherwise respond to the lawsuit, a default judgment was entered against him in that amount.  (ECF No. 3-3).  The law is clear that a default judgment is treated the same as a litigated judgment for purposes of *res judicata* and is considered a decision on the merits.  *See Djonovic v. City of Detroit*, No. 23-12889, 2024 WL 3886153, at *6 (E.D. Mich. April 4, 2024) (citing *Richards v. Tibaldi*, 272 Mich. App. 522, 531 (2006)).  Thus, the first element of the *res judicata* test is satisfied.

### b.      Privity

With respect to the second element, RVO is in privity with CAC, the plaintiff in the State Court Case.  Privity is defined broadly under Michigan law:

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert.  The outer limit of the doctrine traditionally requires both [1] a 'substantial identity of interests' and [2] a 'working functional relationship' in which [3] the interests of the nonparty are presented and protected by the party in the litigation.

*Bates v. Twp. of Van Buren*, 459 F.3d 731, 734-35 (6th Cir. 2006) (quoting *Adair v. State*, 470 Mich. 105, 122 (2004)) (alteration in original).  "[A] perfect identity of the parties is

not required, only a 'substantial identity of interests' that are adequately presented and protected by the first litigant." *Adair*, 470 Mich. at 122.  Common examples of privity include a master to a servant, an indemnitor to an indemnitee, or a principal to an agent, such as an attorney on behalf a client, like RVO was for CAC in the State Court Case. *See Viele v D.C.M.A.*, 167 Mich. App. 571, 580 (1988); *see also Lintz v. Credit Adjustments, Inc.*, No. 07-11357, 2008 WL 835824, at *4 (E.D. Mich. Mar. 28, 2008) ("Attorneys are considered privies of their clients for the purposes of *res judicata*.") (citing cases).

In this case, all of Nesbitt's allegations against RVO revolve around RVO's legal representation of CAC.  (ECF Nos. 3-2, 3-3).  For example, Nesbitt's principal allegations against RVO are that, when filing the complaint in the State Court Case, RVO redacted the alleged account number of the debt he owed to CAC, thereby preventing him from "verifying or challenging the validity and identity of the debt being collected, in violation of the FDCPA.  (ECF No. 1, PageID.7).  Nesbitt also alleges that RVO improperly "used state court machinery to extract funds" from him.  (*Id.*, PageID.9).  Accordingly, because the State Court Case involved Nesbitt and CAC, and because RVO was in privity with CAC in that case, the second element of *res judicata* is satisfied.

### c.  *Claims Could Have Been Brought in State Court Case*

There can be little dispute that Nesbitt's claims against RVO could have been brought in the State Court Case.  Although not entirely clear from the face of Nesbitt's amended complaint, giving him the benefit of the doubt, he appears to plead Counts II-V against RVO – thus, claims for violation of the FDCPA, fraud upon the court and abuse of

process, conversion and trespass against trust estate, and a violation of RICO.[3] (ECF No. 1, PageID.8). Nesbitt's FDCPA claim, as well as his other claims (concerning inadequate service and other state court procedural irregularities), all arise from the same operative set of facts as those in the State Court Case – namely, RVO's collection efforts on behalf of CAC when litigating that case. Thus, Nesbitt could have brought these claims in the State Court Case, satisfying the third element of *res judicata*.

For all of these reasons, Nesbitt's claims against RVO are barred by *res judicata* and should be dismissed.

###### 2. *Nesbitt's Claims Also Fail on the Merits*

As set forth above, after agreeing to dismiss Count VI, Nesbitt has six claims remaining: violation of due process under the Fourteenth Amendment and Michigan Constitution; violation of the FDCPA; fraud upon the court and abuse of process; conversion and trespass against trust estate; racketeering under RICO; and negligent supervision and misconduct by public officers. (*Id.*). Although Nesbitt does not specify in his complaint which claims are being asserted against which defendant(s), it is nevertheless clear that they all fail on the merits.

---

[3] As set forth above, in his amended complaint, Nesbitt also pleads claims for civil rights violations under 18 U.S.C. §§ 241 and 242 (Count VI). (ECF No. 1, PageID.8). These are criminal statutes which criminalize the conspiracy against rights and the deprivation of rights under color of law, respectively. Both RVO and the Court Defendants argued in their motions to dismiss that these claims should be dismissed because neither criminal statute authorizes a private right of action. (ECF No. 3, PageID.21-22; ECF No. 5, PageID.74). *See also Djonovic v. Septer*, No. 24-1284, 2025 WL 1005122, at *2 (6th Cir. Mar. 6, 2025) (citing cases). In his response, Nesbitt conceded this fact and "clarifie[d] that the Court may dismiss any standalone criminal counts that do not create a private civil cause of action …." (ECF No. 7, PageID.109). Thus, Count VI of Nesbitt's amended complaint should be dismissed.

###### a.      Due Process Claim

In Count I, Nesbitt pleads a claim for violation of his due process rights under the Fourteenth Amendment.[4]  This claim fails as a matter of law.

As an initial matter, such a claim applies only to conduct of the state, not to private actors.  *See Phillips v. Tangilag*, 14 F.4th 524, 532 (6th Cir. 2021).  Thus, where Nesbitt does not plead – nor could he – that RVO, a private law firm acting as the legal representative of a private lender, was a state actor, Nesbitt's due process claim against RVO necessarily fails.

As for his due process claim against the Court Defendants, who are state actors, the claim fails for a different reason.  The Fourteenth Amendment has both procedural and substantive components.  *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).  To the extent Nesbitt is pleading a procedural due process claim, he must prove both the existence of a property interest and the inadequacy of state remedies.  *See, e.g., Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004); *Collyer v. Darling*, 98 F.3d 211, 223 (6th Cir. 1996) (to pursue a § 1983 claim for a due process violation, "the plaintiff bears the burden of demonstrating that the available state procedures were inadequate to compensate for the alleged unconstitutional deprivation").  Moreover, "[t]he inadequacy of state remedies generally cannot be proven unless those remedies are exhausted." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991).  Here,

---

[4] Nesbitt also pleads a due process claim under the Michigan Constitution.  (ECF No. 1, PageID.8).  However, "[b]oth the Federal and Michigan state constitutions can be evaluated under the same standard for due process violations." *Northville Downs, LLC v. Plymouth Charter Twp.*, No. 24-10492, 2025 WL 2048358, at *5, n. 3 (E.D. Mich. Apr. 21, 2025).

Nesbitt cannot show a deprivation of a property interest without process because he had available state remedies throughout the pendency of the State Court Case (as well as the opportunity to appeal that court's decisions).  As such, any procedural due process claim against the Court Defendants should be dismissed.

To the extent Nesbitt is alleging a violation of his substantive due process rights, he also falls short.  "[A] substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 707 (6th Cir. 2005).  To succeed on such a claim, a plaintiff must demonstrate a "protected property interest" – a legitimate claim of entitlement, not merely an abstract need or unilateral expectation. *Janosek v. City of Cleveland*, 718 F.3d 578, 582 (6th Cir. 2013).

In his complaint, Nesbitt fails to specifically allege any arbitrary or capricious action taken by either the 35th District Court or by any of the three named Clerks that directly deprived him of a protected property interest.  The closest Nesbitt comes is when he alleges that Clerks Niemiec and Lada "issued or facilitated issuance" of writs of garnishment "without judicial signature in violation of Michigan Court Rules and due process."[5]  (ECF

---

[5] Nesbitt also alleges that the 35th District Court is "responsible for overseeing judicial and clerical procedures related to civil garnishment." (ECF No. 1, PageID.7).  It is clear, however, that a municipality may not be held liable under § 1983 under a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, to succeed on a municipal liability claim, a plaintiff must establish that his constitutional rights were violated and that a policy or custom of the municipality was the "moving force" behind that violation. *Id.* at 694.  Nesbitt has not made such allegations here.  Similarly, Nesbitt alleges that Head Clerk Wasalaski is "responsible for supervision and oversight of court procedure and authorized the garnishment process without judicial order." (ECF No. 1, PageID.7).  However, §1983 liability cannot be premised upon mere allegations of *respondeat superior*, *i.e.*, supervisory liability; rather, a

11

No. 1, PageID.7).  In his response brief, Nesbitt points to two specific actions allegedly

taken by Clerk Lada which he maintains violated his due process rights:

- "The Default Judgment dated January 6, 2023, bears ONLY Clerk Jennifer Lada's signature.  Clerks may enter defaults under MCR 2.603(A), but they may NOT enter default judgments, which require judicial action."

- "Each writ of garnishment and each Garnishment of Account (GOA) was signed by Clerk Lada.  Under MCR 3.101(A), a writ may issue only if a valid judgment exists.  Since no valid judgment was ever entered, all writs are VOID."

(ECF No. 7, PageID.106) (emphasis in original).  Indeed, Nesbitt maintains that his due

process rights were violated because "the physical judgment document in the record bears

only Clerk Jennifer Lada's signature" and "[n]o judge's signature appears on ANY

document.  (*Id.*, PageID.110, 111) (emphasis in original).

Both Nesbitt and the Court Defendants attach to their filings a copy of the material

document at issue – namely, a two-page form approved by the State Court Administrative

Office ("SCAO") – which is the operative "DEFAULT REQUEST, ENTRY, AND

JUDGMENT (SUM CERTAIN)" entered on January 6, 2023.  (ECF No. 5-3; ECF No. 7,

PageID.121, 123).  Here, rounding out the allegations in the complaint with this public

document, the authenticity of which is not in dispute, is both necessary and proper.  *See*

*Armengau*, 7 F. App'x at 344.  Indeed, in his response, Nesbitt relies heavily on the default

judgment, attaching both the document itself (ECF No. 7, PageID.121, 123) and an

---

defendant can only be liable under § 1983 if the plaintiff shows that she personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See Monell*, 436 U.S. at 691.  Thus, Nesbitt's due process claims against the 35th District Court and defendant Wasalaski should be dismissed.

affidavit purporting to interpret handwriting on that document to support his allegation that "Clerk Lada signed the Default Judgment, not Judge Plakas" (*Id.*, PageID.116-17) and, therefore, that the default judgment is void, has no legal effect, and cannot support any garnishment.  There are two problems with Nesbitt's arguments.

First, Nesbitt contends that a Clerk of the Court (such as Clerk Lada) is not authorized to sign a default judgment.  This is incorrect.  MCR 2.603 draws a clear distinction between default judgments that may be entered by a clerk and those requiring judicial action.  Under MCR 2.603(B)(1), the "Clerk" may sign and enter a default judgment when: (a) the plaintiff's claim is for a sum certain or a sum that can by computation be made certain; (b) the default was entered because the defendant failed to appear; (c) the defaulted defendant is not an infant or incompetent person; and (d) the damages amount requested is not greater than the amount stated in the complaint.  Only in "all other cases" – such as those involving unliquidated damages – must the default judgment be entered by the "Court" under MCR 2.603(B)(3).  Here, as set forth above, CAC's claim against Nesbitt was for a sum certain; Nesbitt failed to appear; he was not an infant or incompetent person; and the amount did not exceed the amount stated in the complaint.  Because all four conditions of MCR 2.603(B)(1) were satisfied, Clerk Lada was expressly authorized by the Michigan Court Rules to sign and enter the default judgment.  Had she done so, then, the judgment would have been fully valid.

The other problem with Nesbitt's argument, however, is that a review of the document at issue makes clear that it was Judge James Plakas – not Clerk Lada – who signed the default judgment, which led to the garnishment.  As clearly shown on the default

13

judgment, the signature associated with it has a State Bar of Michigan "P number" written next to it (P52722), which are license numbers used to identify attorneys (and judges). A quick search of the State Bar of Michigan's website establishes that P52722 is associated with Judge James Plakas of the 35th District Court.[6]  Thus, while it would have been permissible for any 35th District Court Clerk to sign the default judgment, the very document on which Nesbitt relies reflects that it was Judge Plakas that did so.  As such, Nesbitt's arguments that the default judgment was void, and that the garnishment stemming therefrom violated his substantive due process rights, are without merit.  For these reasons, Nesbitt's due process claim should be dismissed.

### b.    FDCPA Claim

While not entirely clear from Nesbitt's complaint, it appears he is alleging that RVO violated the FDCPA when it prevented him from "verifying or challenging the validity and identity of the debt being collected" by partially redacting his account number in the State Court Case complaint.  (ECF No. 1, PageID.7).  It is true that, in the complaint filed by RVO on behalf of CAC, it refers to Nesbitt's "account/loan number" as "****1369." (ECF No. 3-2, PageID.33).  Nevertheless, Nesbitt's FDCPA claim fails for several reasons.

First, FDCPA actions must be brought within one year from the date on which the violation occurred.  *See* 15 U.S.C. § 1692k(d).  Because all of the underlying litigation in the State Court Case – including issuance of the satisfaction of judgment – occurred by July 17, 2024 (ECF No. 3-4), more than one year before Nesbitt filed his complaint, his

---

[6]  *See*   https://sbm.reliaguide.com/lawyer/search?lic.equals=P52722&memberTypeId.equals=1 (last accessed June 1, 2026).

FDCPA claim is barred by the statute of limitations.[7]  Second, RVO did nothing improper in partially redacting Nesbitt's account number, as the Michigan Court Rules specifically require a party to redact financial account numbers, which is what RVO did.  *See* MCR 1.109(D)(9)(a).  Finally, Nesbitt's allegation that he was somehow misled by the partial redaction of his account number is simply not plausible when the contract underlying the debt was attached to the state court complaint and included the make, model and VIN of the vehicle for which the loan was provided, along with Nesbitt's electronic signature. (ECF No. 3-2).  Therefore, it was easily discernible what debt was being pursued, should Nesbitt have chosen to investigate the situation.  For all of these reasons, Nesbitt's FDCPA claim should be dismissed.

c.      *Fraud Upon the Court and Abuse of Process Claim*

Nesbitt next alleges a claim for "Fraud Upon the Court and Abuse of Process," which must be directed at RVO.  (ECF No. 1, PageID.8).  To establish an abuse of process claim, Nesbitt must plead and prove that RVO had (1) an ulterior purpose and (2) took an act in the use of the process that is improper in the regular prosecution of its claim.  *See Lawrence v. Burdi*, 314 Mich. App. 203, 211 (2016).  Here, Nesbitt has not pled any facts indicating that RVO had an ulterior purpose when it sought to collect CAC's valid debt, nor has he pled any facts showing an improper act.

The ordinary filing of a lawsuit by a lawyer on behalf of its client is not an improper

---

[7] In his response brief, Nesbitt asserts that statute of limitations is an affirmative defense, and dismissal at the pleading stage is "improper unless the time bar is apparent on the face of the Complaint and no set of facts could avoid the bar."  (ECF No. 7, PageID.107).  That is exactly the situation here with respect to Nesbitt's FDCPA claim, however, as explained above.

15

act. *See Friedman v. Dozorc*, 412 Mich. 1, 31 (1981).  Rather, Nesbitt also must have pled facts showing that the judicial process was used "for a purpose other than that which it was designed to accomplish[.]"  *Ursery v. Option One Mortg. Corp.*, No. 271560, 2007 WL 2192657, at \*16 (Mich. Ct. App. July 31, 2007).  Here, as discussed above, the record evidence shows that Nesbitt defaulted on his auto loan, and that as a natural consequence of that default, RVO initiated the State Court Case for the purpose of obtaining the outstanding amount due on behalf of its client, CAC.  Thus, the underlying case operated exactly as intended and cannot support an abuse of process claim.  Accordingly, Nesbitt's fraud upon the court and abuse of process claim should be dismissed.

       d.       *Conversion and "Trespass Against Trust Estate" Claim*

Nesbitt next pleads a claim of "Conversion and Trespass Against Trust Estate." (ECF No. 1, PageID.8).  Conversion is an action for wrongful appropriation of personal property.  *See Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 349 (2015).  Liability for conversion does not arise if the actor is privileged to dispossess another of the property.  *See Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438 (1960).  Thus, if a defendant's right to possession was greater than the plaintiff's, as was the case here, the plaintiff cannot maintain an action for conversion.  *See Rohe Sci. Corp. v. Nat'l Bank of Detroit*, 133 Mich. App. 462, 468, (1984).

Here, Nesbitt fails to state a claim for conversion because he does not allege that the debt was invalid or that he actually made his loan payments and was not in default.  By collecting a valid debt on behalf of its client, RVO cannot be said to have engaged in a

16

wrongful appropriation.  Thus, Nesbitt's claim for conversion should be dismissed.[8]

e.      RICO Claim

Nesbitt also pleads a RICO claim against some (or all) of the named defendants.  To state a viable RICO claim, Nesbitt must allege that "1) there were two or more predicate offenses; 2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; 3) a nexus between the pattern of racketeering activity and the enterprise; and 4) an injury to his business or property by reason of the above." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993).  Additionally, a plaintiff may recover for a defendant's RICO violations in a civil suit only if the defendant's violations have *caused* his injury. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495-96 (1985) (construing 18 U.S.C. § 1964(c)).  Pursuant to 18 U.S.C. § 1964(c), a plaintiff must "demonstrate that a causal nexus exists between his injury and the predicate acts (the criminal RICO violations), [or] he has no standing to sue under § 1964(c)." *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 154 (6th Cir. 1990).  The injuries must have been directly caused by the defendants' conduct; injuries directly caused by another party (including the plaintiff himself) are insufficient to state a claim for damages under RICO. *See, e.g., Firestone v. Galbreath*, 976 F.2d 279, 285 (6th Cir. 1992).

Here, Nesbitt has not alleged facts to support any of the elements of his RICO claim – *i.e.*, that the defendants were enterprises that engaged in interstate commerce, the

---

[8] Although not entirely clear, it appears – as discussed above – that Nesbitt's claims for conversion, trespass, fraud, and abuse of process – are directed against RVO.  However, to the extent Nesbitt is attempting to plead these claims against the Court Defendants, he has failed to do so for the reasons set forth herein.

existence of any racketeering activity, or any nexus whatsoever between an "enterprise" and "racketeering activity."  Nesbitt's RICO claim also fails because his situation was of his own making; the State Court Case flowed solely from his own default on his car loan, which he has never alleged he did not owe.  Thus, Nesbitt's RICO claim also should be dismissed.[9]

###### f.      Negligent Supervision by Public Officers Claim

Finally, to the extent Nesbitt pleads a claim for "Negligent Supervision and Misconduct by Public Officers" against the Court Defendants (ECF No. 1, PageID.8), such a claim fails.  Like Nesbitt's due process claim, this claim stems from a mistaken belief that the default judgment and, therefore, the writ of garnishment were invalid because they were not signed by a judge.  As set forth above, *supra* at 13-14, the SCAO form at issue was signed by Judge James Plakas.  Thus, Nesbitt failed to plead any facts establishing negligence on the part of any of the Court Defendants and, as such, this claim too fails as a matter of law and should be dismissed.

## III.    CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that RVO's and the Court Defendants' dispositive motions **(ECF Nos. 3, 5)** be **GRANTED**.

---

[9] In his response brief, Nesbitt makes a one-sentence reference to "RACKETEERING UNDER MCL 750.159g," asserting in conclusory fashion that "Defendants engaged in a pattern of unlawful deprivation of property through fraudulent court filings." (ECF No. 7, PageID.111).  However, as set forth above, *supra* at 11-14, Nesbitt has not shown the existence of "fraudulent" court filings. Moreover, MCL 750.159g pertains to actions taken in furtherance of committing "an offense" for financial gain.  Here, where none of the defendants have committed an "offense," but rather acted to lawfully recover a debt owed, Nesbitt cannot maintain a claim under this statute.

Dated: June 2, 2026                              s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge

## **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

*Note these additional requirements at the direction of Judge Michelson:*

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. An objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 2, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
